UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIEWIT INFRASTRUCTURE
SOUTH CO.,

           Plaintiff,

v.                                 Case No. 2:20-cv-660-JLB-NPM

WESTERN SURETY CO., MACK
INDUSTRIES, INC., d/b/a Mack Concrete
Industries, Inc., and CHARLOTTE
COUNTY, FLORIDA,

           Defendants.

_____

MACK INDUSTRIES, INC.,

           Third Party Plaintiff,

v.

MICHAEL W. SPRINGSTEAD
ENGINEERING, LLC, and MICHAEL W.
SPRINGSTEAD,

           Third Party Defendants.

_____

**ORDER**

Defendant/Third Party Plaintiff Mack Industries, Inc. ('Mack') moves to dismiss Count IV (equitable contribution) of Plaintiff Kiewit Infrastructure South Co.'s operative complaint for failure to state a claim.  (Doc. 43.)  After carefully reviewing Mack's motion and Kiewit's response, the Court holds that Kiewit has stated a claim for equitable contribution under Florida law.

Accordingly, Mack's motion (Doc. 43) is **DENIED**.

BACKGROUND

Kiewit executed a prime contract with Defendant Charlotte County, Florida, ("the County") to serve as general contractor for the Loveland Grand Master Lift Station Project.  (Doc. 41-3 at 3, ¶ 10.)[1]  To help complete the project, Kiewit executed a subcontract with Defendant Mack Industries Inc., d/b/a Mack Concrete Industries, Inc. ("Mack") to provide precast concrete manhole covers and a pump station structure (collectively, the "structures").  (Id., ¶ 11.)  The County ultimately rejected the structures and directed Kiewit to remove and replace them.  (Id., ¶ 16.)  In turn, Kiewit notified Mack that it was in default of the subcontract and directed it to replace the rejected structures.  (Id., ¶¶ 17–18.)  After Mack did not comply, Kiewit terminated the subcontract and brought this action in state court against both Mack and Defendant Western Surety Co., which issued a supply bond on the subcontract.[2]  (Id., ¶¶ 19–20.)  Defendants removed the action to this Court, and Mack later impleaded Michael W. Springstead Engineering, LLC, along with its eponymous owner based on their design of the structures.  (Docs. 1, 14.)

The parties have not provided the Court with a copy of the prime contract. Attached to the operative complaint, however, is a document confirming that Charlotte County accepted Kiewit's bid to serve as the general contractor on the Loveland Grand Master Lift Station Project on December 21, 2017.  (Doc. 41-4.)

---

[1] "A 'lift station' collects sewage from homes and businesses, then pumps out the sewage when it reaches a certain level."  July v. Bd. of Water & Sewer Comm'rs, No. 11-0635-WS-N, 2012 WL 5966637, at *1 n.2 (S.D. Ala. Nov. 29, 2012).

[2] Charlotte County was later added as a defendant in an amended complaint.

The Court has also been supplied with a copy of the subcontract between Mack and

Kiewit.  (Doc. 41-1.)  Section 1(b) of the subcontract reads:

> [Mack], by signing this Contract, acknowledges that it has
> independently assured itself that all of the Prime Contract documents
> have been available to it, and confirms that it has examined all such
> documents and agrees that <u>all of the aforesaid Prime Contract
> documents shall be considered a part of this Contract by reference
> thereto.  [Mack] agrees to be bound to [Kiewit] and [Charlotte County]
> by the terms and provisions thereof so far as if they apply to the Work,
> unless otherwise provided herein</u>.

(<u>Id.</u> at 4 (emphasis added).)

> Section 13 reads:

> [Mack] warrants to [Kiewit] that the materials shall be free from all
> defects, shall be of the quality specified, shall be fit and appropriate for
> the purpose intended and <u>shall conform to the provisions,
> specifications, performance standards, drawings, samples of other
> descriptions contained herein or in the Prime Contract</u>, and agrees to
> make good, at its own expense, any defect in materials which may
> occur or develop prior to Contractor's release from responsibility to
> [Charlotte County].  [Mack's] warranty shall in all respects meet the
> terms of the warranty requirements of the Prime Contract for the
> materials and services ordered, for one year or longer as otherwise
> required.

(<u>Id.</u> at 6 (emphasis added).)

In Count IV of the complaint, Kiewit alleges that it "share[s] a common

obligation" with Mack "to furnish the County with materials that are free from

defects," and that it "has paid all costs relating to the materials and equity requires

that Mack pay for damages under the theory of common obligation."  (Doc. 41-3 at 8,

¶¶ 41–42.)  Because of Mack's "failure to pay its share of the costs," Kiewit claims it

has incurred "substantial damages" related to the cost of removing and replacing

the structures and performing additional related work.  (<u>Id.</u>, ¶ 43.)

3

## DISCUSSION

Florida law permits both statutory and equitable contribution.  See Fla. Stat.

§ 768.31; Schrank v. Pearlman, 683 So. 2d 559, 561 (Fla. 3d DCA 1996).  "The

doctrine of equitable contribution attempts to ensure that the burden of performing

a common obligation is equally distributed between those who have the

obligation."  Liberty Mut. Fire Ins. Co. v. Wal-Mart Stores E., LP, 269 F. Supp. 3d

1254, 1264 (M.D. Fla. 2017) (quoting Fletcher v. Anderson, 616 So. 2d 1201, 1202

(Fla. 2d DCA 1993)).  "When a person pays more than his share of a common

obligation, the law gives him the remedy of contribution to obtain from the other

obligors payment of their respective shares of the obligation."  Desrosiers v. Russell,

660 So. 2d 396, 398 (Fla. 2d DCA 1995) (citation omitted).  Moreover, Florida courts

have held that equitable contribution is available where "there is no express

agreement covering rights of contribution."  Schrank, 683 So. 2d at 561.

Florida's case law does not provide a precise rule to determine whether

parties share a "common burden."  See e.g., U.S. Fid. & Guar. Co. v. Liberty Surplus

Ins. Corp., No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, at *3 (M.D. Fla. Oct.

31, 2007) (comparing Florida case law to the Ninth Circuit's test for equitable

contribution claim by one insurer against another).  But parties may share a

common obligation  "if they are either co[-]obligors or joint tortfeasors, and parties

are co-obligors if they are jointly liable or jointly and severally liable on an

obligation."  Helmet House Corp. v. Stoddard, 861 So. 2d 1178, 1180 (Fla. 4th DCA

2003) (citing Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship, 674

A.2d 106, 137 (Md. Ct. Spec. App. 1996), aff'd, 695 A.2d 153 (1997)).

## I.   Florida case law does not foreclose an equitable contribution claim outside of the guarantor and surety context.

Mack first argues that Florida only recognizes a right to equitable contribution in the guarantor and surety context, not the contractor/subcontractor context.  (Doc. 43 at 5.)  It relies principally on the Southern District's interpretation of <u>Helmet House</u> in <u>Porto Venezia Condo. Ass'n, Inc. v. WB Fort Lauderdale, LLC</u>, No. 11-60665-CIV, 2012 WL 12838283, at *3 (S.D. Fla. May 29, 2012) ("Though the Court acknowledges that equitable contribution does exist under Florida law, Florida courts have confined its application to the guarantor and surety context.").  Unlike the Southern District, however, this Court does not read <u>Helmet House</u> so narrowly.

In <u>Helmet House</u>, a couple sued a contractor for a defective roof on their house.  861 So. 2d at 1178–79.  The contractor impleaded the subcontractor and brought, among other things, a claim for contribution.  <u>Id.</u> at 1179.  The jury ultimately found that the contractor was 70 percent negligent, and the subcontractor was 30 percent negligent.  <u>Id.</u>  After the verdict was rendered, the trial court denied the subcontractor's motion for judgment notwithstanding the verdict on the contractor's contribution claim, and the subcontractor cross-appealed the denial.  <u>Id.</u>  On appeal, the subcontractor asserted that the contractor never pleaded a theory of equitable contribution based on common obligation.  <u>Id.</u>  In the alternative, the subcontractor argued that the theory of common obligation did not apply as a matter of law.  <u>Id.</u>  Florida's Fourth District Court of Appeal ("Fourth DCA") agreed with both arguments.  Noting the relative dearth of case law in this

area, the Fourth DCA cited <u>Desrosiers</u> and <u>Hartford Accident & Indemnity Co.</u> for the proposition that contribution "may . . . be applied to cases involving joint contractual obligations." <u>Id.</u> at 1179.  The Fourth DCA emphasized <u>Hartford Accident & Indemnity Co.</u>, where the court held that there was no right of contribution between a contractor and subcontractor as a matter of law because the subcontractor was not a co-obligor on the contractor's warranty.  <u>Id.</u> at 1179–80.  And to be a co-obligor, parties must be "jointly liable or jointly and severally liable on an obligation." <u>Id.</u> at 1180.  Finding this holding persuasive, the Fourth DCA held that the parties in <u>Helmet House</u> "did not share a common obligation" because "there was no reasonable evidence upon which a jury could have legally entered a verdict in favor of [the contractor]." <u>Id.</u> at 1180.  Other than that, the Fourth DCA did not explain why the evidence submitted at trial was lacking.

The Southern District later relied on <u>Helmet House</u> to dismiss a claim for equitable contribution in <u>Porto Venezia</u>.  2012 WL 12838283, at *3–4.  In that case, a business entity that was assigned all of the rights of the original developer after the construction project was already completed sought contribution from a third-party plaintiff.  <u>Id.</u> at *1.  The Southern District rejected the assignee's equitable contribution claim and remarked that "Florida courts have confined [the] application [of equitable contribution] to the guarantor and surety context," citing <u>Helmet House</u> as an example of this supposed confinement.  <u>Id.</u> at *3.

In this Court's judgment, <u>Porto Venezia</u>'s reading of <u>Helmet House</u> is both unduly narrow and ultimately unnecessary to <u>Porto Venezia</u>'s holding because the

party seeking contribution there was an assignee of the original developer.  Nothing in Helmet House suggests that a contractor and subcontractor cannot—as a matter of law—be co-obligors for purposes of contribution unless they also have a guarantor or surety relationship.[3]  Indeed, Helmet House's discussion of what constitutes a common obligation is arguably dicta because the Fourth DCA found that no theory of common obligation was specifically pleaded.  861 So. 2d at 1179.  Here, as explained below, the theory of common obligation was expressly pleaded.  And the Court is not able to determine whether there is evidentiary support for such a theory at this stage of litigation.  Thus, the Court cannot conclude that Kiewit's equitable contribution claim fails as a matter of law.

## II.   Kiewit has plausibly alleged that it and Mack have a common obligation to the County, and these allegations are not contradicted by the exhibits to the operative complaint.

Mack next argues that Kiewit has both failed to plausibly allege that it has a common obligation to the County, and that any such allegations are contradicted by the contractual documents attached to Kiewit's operative pleading.  (Doc. 43 at 6–7.)

The Court disagrees on both fronts.  The operative complaint provides that "Kiewit and Mack share a common obligation to furnish the County with materials that are free from defects."  (Doc. 41-3 at 8, ¶ 39.)  This allegation is not contradicted by the complaint's exhibits in any way.  To the contrary, section 1(b) of

---

[3] In at least one instance, a Florida court applied Florida's contribution statute, which only governs contribution among joint tortfeasors, to an architect and a contractor because "[t]he two were engaged in the common enterprise of designing and constructing a single building."  Salley v. Charles R. Perry Const., Inc., 403 So. 2d 556, 557 (Fla. 1st DCA 1981).

the subcontract (which is attached to the complaint) plainly provides that Mack is bound to <u>both</u> Kiewit and Charlotte County as follows, "[Mack] agrees to be <u>bound to [Kiewit] and [Charlotte County]</u> by the terms and provisions [of the prime contract] so far as if they apply to the Work." (Doc. 41-1 at 4 (emphasis added).) Although the Court has not yet seen the prime contract, the language of the subcontract seems to fly in the face of Mack's argument that it has no obligation whatsoever to the County and that it is "in contractual privity with Kiewit alone."[4] (Doc. 43 at 7.) Again, the plain language of the subcontract, <u>at a minimum</u>, implies that Mack had obligations to the County as well. The Court indubitably has sufficient information to conclude that, at least at this early stage of litigation, Kiewit has stated a claim for equitable contribution.

### III. The Court does not necessarily interpret Count IV to mean that Kiewit is requesting something other than contribution.

Mack next argues that Kiewit cannot recover contribution damages because it has not alleged that it is "liable to the County in contract, and that it is being forced to discharge some form of joint contractual obligation that Kiewit and Mack both have to the County." (Doc. 43 at 8.) In other words, Mack is arguing that the County must first seek to enforce its contractual rights against Kiewit and Mack as co-obligors. Mack cites no law to support this argument, and the Court has failed to find support to determine that a contribution claim based on a theory of common

---

[4] In its complaint, Kiewit claims that it attached a "copy" of the prime contract "without attachments, which are voluminous and possessed by the County." (Doc. 41-3 at 3, ¶ 10.) The Court assures the parties that it is capable of handling whatever attachments are included with the prime contract.

contractual obligation necessarily requires a judgment against Mack and Kiewit or a lawsuit by the County with Mack and Kiewit as co-defendants.  Accordingly, the Court rejects this argument (at least for now).  That said, the Court notes that some of the damages Kiewit is seeking may not be entirely appropriate for an equitable contribution claim.[5]  This issue may warrant revisiting at summary judgment.

## IV.  There is no express agreement covering the rights of contribution.

Finally, Mack argues that equitable contribution is not available because there is an express contract between itself and Kiewit.  (Doc. 43 at 8–9.)  Because the right to contribution is based on the concept of an <u>implied</u> agreement, Mack reasons that the existence of an <u>express</u> agreement forecloses any right to equitable contribution.  <u>Id.</u> at 9.  The Court does not agree with Mack's reading of Florida law.  The rule is that "Florida law recognizes a right of equitable contribution" if "there is no express agreement <u>covering rights of contribution</u>."  <u>Schrank</u>, 683 So. 2d at 561

---

[5] A party seeking contribution is entitled to recover from others after paying "more than his or her proportionate share."  <u>United States v. Atl. Rsch. Corp.</u>, 551 U.S. 128, 138 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004)).  Recovery for contribution is thus limited by the lesser of: "(i) the amount by which the claimant's intervention has reduced an enforceable obligation of the defendant, (ii) the amount by which the claimant's reasonable outlay in discharge of the common obligation exceeds the claimant's proportionate share of the obligation discharged, or (iii) the amount of the claimant's outlay."  Restatement (Third) of Restitution and Unjust Enrichment § 23 cmt. f (Am. L. Inst. 2011).  Kiewit is not exclusively seeking to recover the difference between the cost of fully discharging its common obligation and its proportionate share of that same obligation (whatever that share may be).  It also requests damages for "impact on related work," costs of related "additional work" that does not seem related to Mack's obligations under the subcontract, and "lost profits."  (Doc. 41-3 at 8 at ¶ 43.)  Equitable contribution may not be the correct vehicle for such damages.  <u>See generally</u> <u>Collection & Recovery of Assets, Inc. v. Patel</u>, 276 So. 3d 494, 498 (Fla. 5th DCA 2019) (noting that equitable contribution cannot result in a windfall due to one party paying more than their fair share of a common obligation).

(emphasis added).  In other words, not just any express agreement will do; instead, the agreement must mention something about contribution.  Even the case law cited by Mack tacitly acknowledges as much.  See Fulton v. Brancato, 189 So. 3d 967, 969 (Fla. 4th DCA 2016) (noting that a quasi-contractual right only operates when there is no contract "to provide a remedy" (citation omitted, emphasis added)).

While the subcontract exists, neither party contends that the subcontract covers the rights of contribution between Kiewit and Mack.  Without such coverage, the Court is unwilling to shut the door to equitable relief.  Accordingly, the Court rejects Mack's final argument.

## CONCLUSION

For the reasons above, Mack's motion to dismiss Count IV of Kiewit's operative complaint (Doc. 43) is **DENIED**.

**ORDERED** in Fort Myers, Florida, on November 19, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE